STAPLETON, Circuit Judge,
concurring.
McCartney argues that the DJA released his guaranty obligation to Integra when the bank failed to institute a deficiency proceeding naming him as a guarantor within six months of its purchase of the property at the execution sale. This is an untenable position. The automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362, clearly would be undermined by the enforcement in this situation of that portion of the DJA releasing a guarantor who is not so named. 42 Pa. C.S.A § 8103(b). If the court were willing to rest its decision' on this ground, I would join without comment. The court says a great deal more, however, and I am, accordingly, unable to join in its opinion.
It is unnecessary for the court to address the issue of whether the DJA in this situation has the effect of releasing Lamar’s Restaurant & Lounge’s obligation to Integra. Accordingly, I would not address that issue. Were it necessary for the court to address it, however, I would find no justification for concluding, as does the court, that the automatic stay provision deprives a primary obli-gor not in bankruptcy of the benefit that the DJA intended it to have. There are simply no “unusual circumstances” warranting an exception from the general rule that § 362 applies only to a debtor in bankruptcy. The court’s conclusion to the contrary, while it makes no difference here, is likely to lead to mischief in the context of other cases.
As the court persuasively demonstrates, there can be no question that giving full effect to the DJA would undercut the objective of the automatic stay of § 362. There is thus a conflict here between state law and bankruptcy law that must be resolved. Under the Supremacy Clause, in cases of irreconcilable conflict, state law must give way. This does not, however, give a court an unlimited license to decline enforcement of state rules of decision. The court must look for the accommodation which will secure the objective of the bankruptcy law and, at the same time, intrude least on the objective or objectives underlying the state law rule.
The accommodation that this approach counsels here requires the following conclusions:
(a) The objective of § 362 can be secured by holding unenforceable that portion of the DJA which requires the creditor to join the bankrupt guarantor in the DJA proceeding upon pain of losing his claim against the bankrupt guarantor. It would necessarily follow that the bankrupt *514 guarantor would not be bound by the deficiency determination unless he chose, with court approval, to participate. It also follows that the bankrupt guarantor can be pursued in bankruptcy court during the period specified in § 108(e) of the Bankruptcy Code, even though the creditor may not be successful if the claim has been discharged for some reason other than this portion of the DJA.
(b) There is nothing inconsistent between § 362 and that portion of the DJA that requires an executing creditor to file a deficiency proceeding against the primary debtor in order to preserve his claim against the primary debtor. Giving effect to this portion of the DJA would be consistent with the rationale of Maritime Electric Co. v. United Jersey Bank, 959 F.2d 1194 (3d Cir.1991). Moreover, as I have noted, I find nothing in the Code that would justify depriving the primary debtor of the protection of the DJA.
The difference between these conclusions and those reached by the court is not material here because McCartney argues only that he was released under the terms of the DJA. He does not argue that he was released by the effect which Pennsylvania law accords an instrument having the terms of his note.[6] The difference between my conclusions and those of the court would be important, however, if it appeared that Pennsylvania follows the generally accepted rules regarding the effect on a guarantor of releasing the primary debtor and if the plaintiff were relying on that law.
We have no occasion here to comment on Pennsylvania’s rule, but the generally accepted rule is that a “party who holds a contract of guaranty may by his act release the guarantor, even though he may not intend to do so. A guarantor [, for example,] is discharged by operation of law from further liability by any act which extinguishes the principal obligation_” 38A C.J.S. Guaranty § 83 at 642 (1996). I perceive no inconsistency between the Bankruptcy Code and a state law rule which permits parties to bargain for an arrangement such that the guarantor will be liable only if the primary debtor is not released by the creditor. It necessarily follows that there is nothing inconsistent between the bankruptcy law and enforcement of this generally accepted state law rule. It would thus be permissible to hold in an appropriate ease that a creditor in a state with such a rule releases his claim against a guarantor in bankruptcy if it allows its rights against the primary debtor to lapse by failing to pursue a DJA type proceeding within six months.
I realize that such a holding would mean that a creditor in such a state would have to pursue the primary debtor in a deficiency proceeding even where it has little or no hope of being able to collect from the primary debtor. But that is a policy choice made in statutes like the DJA, and we have no justification for rejecting that policy choice and no basis for drawing a line between cases where the primary debtor has no assets, a few assets, or many assets but perhaps not enough to cover the judgment.
The statutory provisions relied on by McCartney are preempted by federal bankruptcy law. I would affirm the judgment of the district court for that reason.

. The appendix does not contain what McCartney refers to as his note of guaranty, and he cites no Pennsylvania case law on whether and under what circumstances release of the primary obli-gor releases a guarantor or surety, etc.